EUGENIA S. GRAHAM

*v.*

SARAH SPENCE et al., executors of Gaven Spence, deceased.

[Decided March 14th. 1906.]

A bill by a donee to establish a gift alleged that she was a sister of the donor, who was a partner with his father, and that the donor, being conscious of approaching death, verbally gave to the donee his interest in the firm, and that the father, after the donor's death, and in consideration of the donee refraining from seeking to establish the gift, agreed that the interest of the donor in the firm should become the property of the donee. It did not appear whether the donor died testate or intestate, nor to whom his property passed at his death.—*Held,* (1) that those who would have been the owners of the property, but for the gift, are necessary parties; (2) in default of proof that the property of the donor passed to his father. the complainant did not show that the father had any property of the decedent which was impressed with a trust in her favor; (3) the contract between the father and the donee was not supported by a consideration, and was not enforceable as a family settlement,

Heard on bill and demurrer.

This is a bill filed by Eugenia S. Graham against the executors of Gaven Spence, her father.

She charges that she was the sister of Millard Spence, and that he was in partnership with his father and one Rutan, trading under the name of Gaven Spence & Company; that Millard Spence, on the day of his death, March 4th, 1886,

"in full consciousness of his approaching death, gave, by word of mouth, to your oratrix, all his personal property of whatsoever kind, and specifically mentioned his interest in the said partnership of Gaven Spence & Co. * * * That Gaven Spence proceeded to act in accordance with and in acquiescence of said gift,"

and, together with her uncle, Andrew D. Bloodgood, acting on her behalf, computed the interest of Millard Spence in the firm of Gaven Spence & Company, and found that it "was $2,893.23, which was the amount determined by the said Gaven Spence and the said Andrew D. Bloodgood as belonging to your oratrix."

She charges that thereupon,·

"the said Gaven Spence proposed * * * that he would pay to your oratrix the sum of ninety-three dollars and twenty-three cents immediately, and that he would keep invested the remaining sum of two thousand eight hundred dollars in the partnership of Gaven Spence & Co., and that he would pay to your oratrix, upon the said amount of two thousand eight hundred dollars, at the rate of five per cent. per annum, payable quarterly, which said agreement was accepted by your oratrix, * * *"

and that up to and including November, 1903, Gaven Spence paid her interest in accordance with the agreement, excepting that he did not pay her the full amount of interest agreed upon.

She charges that Gaven Spence died on the 31st of January, 1904, and that the defendants are his executors. She filed ·her claim with the executors, and they served a notice upon her that her claim was disputed.

The ninth and tenth paragraphs of the bill are as follows:

"9. And your oratrix further shows that while it was the intention and desire of the said Millard Spence that all his property should belong to your oratrix, yet your oratrix does not believe that said intention

and desire was carried out by the said Millard Spence in such a manner and way as will permit your oratrix to establish a devise of his said property to your oratrix. And no effort has been made by your oratrix to so establish such devise. Your oratrix, however, insists and charges that the said Gaven Spence, knowing full well the desire of his said son, Millard Spence, to give to your oratrix all his personal property, and feeling the moral obligation on his part to comply with such desire and to carry out to the fullest extent the details of such gift, and in consideration of your oratrix refraining from establishing a devise by the said Millard Spence to your oratrix, did acquiesce and agree that the said property of the said Millard Spence should become the property of your oratrix.

"10. And your oratrix insists and charges that the said Gaven Spence, influenced by the said moral obligation and the said consideration, did act and conduct himself in such a manner as to bind himself, not only morally, but also legally, to in no way dispute the rights of your oratrix in and to the property so as aforesaid given by the said Millard Spence to your oratrix."

Her prayer is that the executors be decreed to pay her "the sum of two thousand eight hundred dollars, and account for the investment of the said sum of two thousand eight hundred dollars since the fourth of March, 1889."

*Mr. Charles T. Glen,* for the demurrants.

*Mr. George W. W. Porter,* for the complainant.

GARRISON, V. C. (after stating facts).

Certain of the causes of demurrer deny facts charged in the bill or allege facts not charged in the bill. This is improper pleading, constituting a speaking demurrer, which cannot be sustained. *Teeter* v. *Veitch,* *66 N. J. Eq. (21 Dick.)* *162* (at *p. 171*) (*Vice-Chancellor Grey, 1904*). Such improper causes of demurrer will therefore not be considered.

There are, however, in the demurrer causes properly stated which duly raise issues to be herein decided.

The complainant must charge in his bill all those facts which are essential to entitle him to relief, and such charges must be certain, clear and positive. *Brokaw* v. *Brokaw's Executors, 41 N. J. Eq. (14 Stew.) 215* (*Vice-Chancellor Van Fleet, 1886*).

I have failed to find in this bill any certain, clear and positive charges of fact which make out a case of equitable jurisdiction.

The parties to this suit are Eugenia S. Graham and the executors of Gaven Spence, deceased. The complainant charges that Millard Spence, her brother, on the day of his death, March 4th, 1886, "in full consciousness of his approaching death, gave, by word of mouth, to your oratrix all his personal property of whatever kind," and specifically mentioned "his interest" in a certain partnership named Gaven Spence & Company, which partnership was composed of her brother, Millard Spence; her father, Gaven Spence, and one Rutan. The bill traces back the origin of whatever claim she may have to this transaction.

If her claim is that the facts charged constitute a good gift *inter vivos,* or a valid *donatio mortis causa,* and she has not received, as she should have received, the subject-matter of the gift, then she must establish the same as against those who, but for the gift, would in law be the owners of the property. Such parties, at least, must be defendants in any suit brought for such a purpose. Since the subject-matter of the gift was wholly personal property, and the giver is dead, the title to such personal property would, but for the gift, have passed to his executor, if he made a will, or to his administrator, if he did not. Therefore, if she claimed a valid gift of either description, and was not vested with possession of the subject-matter of the gift, she must seek to obtain the same by appropriate proceedings against the personal representatives of the deceased donor alone, or in conjunction with the persons having physical possession of the property alleged to have been given.

Whether the alleged donor in this case died testate or intestate does not appear in the bill. Who his beneficiaries were, if he constituted such by will, does not appear. To whom the property would pass in law if he failed to make a will does not appear, because there is no statement of his living relatives at the time of his death. For aught that appears, he may have left a widow and children. It is quite clear, therefore, that, apart from any other considerations, there is not sufficient data set forth in this bill to permit the complainant to seek to establish a gift, with respect to this subject-matter, as against these defendants alone, without joining those who, but for the alleged gift, would have been the owners of the subject-matter given.

Another difficulty in this respect will be found in those charges of the bill which set forth that the complainant, who must be supposed to know more about the situation than anyone else, does not herself believe that the alleged donor did make a valid gift of either description to her.

If the purpose of the pleader was not to set forth a valid gift of either character from Millard Spence to the complainant, but was to set forth such facts as would charge that the property of a decedent passed under circumstances such as would impress the property with a trust in favor of another—namely, in this case, this complainant—there are not sufficient allegations to establish such a situation.

I will not stop to cite or analyze the cases which hold that, under certain circumstances, those to whom the property of a dead man has passed by will, and perhaps by operation of law, take the same subject to certain expressed agreements or contracts which constitute them trustees with respect to such property. I shall not stop to determine whether the cases go far enough to impress such a trust upon personal property passing by operation of law. I shall assume, for the purpose of this consideration, that the law is most favorable to the contention of the complainant. But, even so, the complainant has not alleged such facts as bring her within the rule. There is nothing in the bill to show that the property owned by Millard Spence at the time of his death went by operation of law to his father. As has been before stated, for aught that appears, he may have left a widow and children, and the father may not have had any interest whatever in his property, or, for anything that appears in the bill, he may have left a will, under the terms of which this property was disposed of. So that, even if it be conceded that by the expressions used by the dying donor, in the presence of his father, and the silence of the father, and his subsequent conduct with respect to the property, some rights were vested in the complainant, if it were shown that the father was the next of kin of the son, and that no will was made by the son, the complainant has entirely failed to set forth a basis for the application of the suggested rule. She has entirely failed to show that the father was the next of kin of the son, and that the son left no will.

In default of charges that the property of the son, which is claimed to have had a trust imposed upon it, passed by operation of law to the father, the complainant has not shown herself entitled to relief in this suit, even if the law be as she asserts that it is.

For similar reasons it is impossible to support the complainant's argument that this bill sets out a good cause of action upon the theory of a "family arrangement" or "family settlement." Equity will undoubtedly go a long way to effectuate such an arrangement or settlement, and seizes upon very slight consideration as sufficient to support such.

I shall here again assume the law to be most favorable to the complainant, but I do not find any charges in this bill sufficient to sustain it upon this theory. The nearest approach to any such charge is that contained in the tenth paragraph, as follows:

"That Gaven Spence, * * * in consideration of your oratrix refraining from establishing a devise by the said Millard Spence to your oratrix, did acquiesce and agree that the said property of the said Millard Spence should become the property of your oratrix."

As has been before pointed out, there are no charges in the bill showing that Gaven Spence had any right, title or interest in the property of Millard Spence. In default of such charges there is an entire absence in this bill of anything to show that Gaven Spence had any right to dispose, by contract or otherwise, of the property of Millard Spence, and that any rights could arise in favor of this complainant by Gaven Spence's acquiescence and agreement that the property of Millard Spence should become her property.

She nowhere charges that, because of any claim she might have against the estate of Millard Spence, or against Millard Spence, or with respect to his property, Gaven Spence agreed to pay her any sum of money, or to keep any sum of money invested for her, if she would forbear to press such claim against the estate of Millard Spence.

Without some such charge as this, the contract which she pleads, and which has been set out in full, as made between her and Gaven Spence, is not shown by this bill to have any con-

sideration whatever to support it.    Such contract appears to be a *nudum pactum,* a bare promise to pay her $2,800, or to keep $2,800 invested for her, and presumably to account to her for and pay her the principal.

Whether her rights under such contract, if there were consideration, should be enforced at law or in equity, I do not stop to consider.

I do not think it useful to further elaborate upon this branch of the case since I fail to find any proper charges in this bill of any consideration to support the agreement pleaded.

I do not think that proper practice in the administration of equity would be conserved by requiring a defendant to answer a bill such as this one.    There is such an entire lack of certain, clear and positive charges of fact making out a case in behalf of the complainant that the defendant may truthfully claim not to know what case she is called upon to meet.

The demurrer must be sustained, and I will so advise.